The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit. I want to say that I'm really delighted to be sitting today with my colleague from Phoenix, Judge Hawkins. I'm joining you from Anchorage, Alaska, so we have this virtual courtroom we could all be together today. Judge Hawkins and I want to thank Judge Gritzner for joining us and really volunteering to participate and help us out on our calendar this week. We're very grateful for his help. Counsel, can I just get a sound check and make sure if you just wave your hand and let me know that you can both hear us okay and see us okay? Yes, Your Honor. Right? Okay. And my colleagues can hear and see counsel? Is that right? Yes. Looks like we can. So we're ready to go. That's great. Thanks very much for that. I'll just start with a little bit of housekeeping and then we'll jump straight into the first oral argument. We have submitted several cases on the briefs on record today, so we will decide those without oral argument. And those are first United States v. Heitzman, 16-10487. United States v. Worthing, 18-10226. United States v. Miranda, 19-10446. Martinez v. Barr, 19-71075. And United States v. Hofus, 20-10031. With that, we can move to the first argument on the calendar, and that's United States v. Sobrero Sanchez, 18-10469. And Ms. Cooper, we'll hear from you first. I believe it might be Ms. Allen. Maybe they have it just backwards here. That's fine. I beg your pardon. Mine has it flipped. Well, good morning, Your Honors. My apologies. Go ahead. Good morning, Your Honors. My name is Tara Allen on behalf of Mr. Sobrero Sanchez. I would like to reserve two minutes for rebuttal, and may it please the Court. This is a case of the sentencing guidelines gone wild. Mr. Sanchez, a 30-year-old man with no felonies in the criminal history category of two, was a middleman in supplying drugs to a distributor in Phoenix named Taiwan Huckabee. What started out as conduct that would have resulted in a guideline range of 10 to 12 years ended at sentencing with a guideline range of 30 to life. Mr. Sanchez now appeals his 30-year sentence for this crime. There are two sentencing issues here. One is an increase of the base offense level by two levels from 34 to 36. Incidentally, the base level would have been 30. It had to go to a minimum of 34 because some of the meth found was categorized as ice. That's an issue in itself, but not an issue of this appeal. So Barry was starting at 34, and they charged him with a two-level enhancement for an additional quantity of drugs that the case record's report writer discovered and put in his report that he should be held accountable for for relevant conduct. That was eight pounds of meth in two different transactions, two four-pound incidents. Counsel, I'm most concerned about the September 10th transaction. Could you focus on that? Yes, for sure. So the first four pounds was based on a wiretap that happened where they heard an unidentified male call Mr. Sanchez on September 6, 2016. We're really familiar with the facts of the case. Okay. So if we could talk specifically about the guideline and how those... I know we're talking about eight additional pounds, and it's the September 10th transaction. I'm trying to figure out how... But I'm not concerned factually. I'm concerned about how it fits into the guidelines. Right. The conspiracy in this case was charged from July through, I believe, August 9. And the main co-conspirator with Mr. Sanchez, Mr. Huckabee, was killed August 25th. So there's an ongoing investigation going into other people and other players that doesn't involve this conspiracy that was charged. Can I ask you specifically, what is your understanding of which provision of the guidelines the district court relied upon to rope in the September 10th transaction as relevant conduct, please? I believe it was 3B11. Am I correct on that? I had it written down. No, 1B1.3. That's conduct of others. Pardon? That's conduct of others. Right. That's... Is your argument that the September 10th transaction was not properly considered because it occurred outside the time frames of the conspiracy? Is that your argument? That's part of my argument. Not only did it occur outside the time frame of the conspiracy, but it didn't involve the criminal activity from the conspiracy. Because Mr. Huckabee was dead? I believe it was 1B1.3A. The use of relevant conduct is how the judge roped in the... But there are three ways for this quantity to have been deemed relevant conduct. Right. And your understanding is that the court relied upon not the conduct of the defendant, but conduct of others. That's it? Yes, and... Yes, and there's no proof that the defendant was really even involved in this conduct with the surveillance of what they saw in the Pierce address, and no drugs being found, and there was a bag, and nobody knows what the bag was in. So, yes, it's conduct of others, and that is my argument. Have you been able to... Excuse me. Have you been able to find any Ninth Circuit cases in which our court refused to consider as relevant conduct because the conduct occurred outside a charged conspiracy? I believe that that case is U.S. v. White. Let me see. I have it in my brief. U.S. v. White-Cotton? Counselor, are you familiar with Miller, our Miller case that discusses 1A and 1B? Yes, I have it cited in my brief on page 23. Okay, so that case includes a statement that... I mean, it doesn't explain, but it does include a statement that the trailing clause applies. Do you agree that the trailing clause applies here? No, I don't. Why not? I believe the charged conspiracy was over the minute that Huckabee got killed. I'm sorry, could you say that again? I believe that the conspiracy conduct in this case ended the day that Taiwan Huckabee got killed, August 25th. I'm asking a different question. I'm asking, as a matter of law, do you agree that the trailing clause applies to the third option under the guideline? Okay. I'm sorry, Your Honor. I need to familiarize myself with the trailing clause. My question is whether it applies to A2. Would you like to save some time for rebuttal and maybe look at that in the interim? Yes, thank you. All right, let's do that. It's a pretty specific question, so I'll just repeat it. My question is whether the trailing clause applies to 1B1.3A2. Thank you. After Miller. Okay, you bet. We could hear from opposing counsel now, and forgive me for getting your names backwards. Thank you, Your Honor. Good morning. My name is Lacey Cooper, and I represent the United States in this matter. May it please the court. In 2016, the defendant was the subject of a wiretap investigation, which had two separate wire interception periods. The defendant was only charged with conduct that occurred during the first interception period, but the district court found the defendant responsible for conduct that occurred during the second wire interception period as well as relevant conduct. That's the additional four pounds that the court has been inquiring about of opposing counsel. The district court did not clearly err when it found that the government had proved by preponderance of the evidence that the additional four pounds of methamphetamine were attributable to the defendant as relevant conduct.  Your Honor, I believe that she relied on 1B1.3A2 as a common scheme or plan or continuing course of conduct. Okay, if that's the case, do you agree that the trailing clause applies to A2? Your Honor, I also do not know what the court is referring to when you say the trailing clause. Okay. Your Honor, the reason that I believe that the court relied on A2 is that the court spent time talking about the similar slang terms that were used during the charged conspiracy and also during the September transaction, that being the slang term girls for methamphetamine. The court also talked about it being a similar price point for the methamphetamine that was sold in September as in July and August of 2016. Obviously, the transactions were very close in time. They used a similar modus operandi in that the defendant had a courier that would distribute the drugs for him for the August transaction, as well as for the September transaction. Counsel, I don't want to take up a whole lot of your time on an issue that you may not, but it is going to be central for me. So I'll just tell you the trailing clause from our case law, and I think from the commentary, refers to conduct that must have occurred during the commission of the offense of conviction in preparation for that offense or in the course of attempting to avoid detection or responsibility. That's referred to as the trailing clause, and that's what I mean by the trailing clause. Okay. So, and during the commission of the offense of conviction in preparation for that offense or in the course of attempting to avoid detection. Okay. Again, I don't mean to throw you a curveball. That's what I'm referring to as the trailing clause. And the conviction here is conspiracy to distribute, right? Yes. Okay. So what I'm concerned about is that the Miller case seems to indicate that the trailing clause applies to A2. And your view is that the district court judge relied on A2. Okay. To add these other four pounds as relevant conduct. Okay. Since the conviction is for conspiracy and the charge conspiracy, right, was over before September 10th, that's why I'm concerned about this language. Whether you want to call it the trailing clause or not doesn't matter so much. But did this offense on September 10th occur during the commission of the offense in preparation for the offense or attempting to avoid detection for that offense? And thank you, Your Honor, for your patience in telling me what you refer to as the trailing clause. Sure. And my answer would be that the September transaction was part of the same course of conduct or common scheme or plan as the charged conspiracy. Well, where would it end then? Where would it end? Well, I think that the guidelines certainly give some helpful instructions in the notes section about how to determine whether a subsequent transaction is close enough in time and character to the charged conduct so that it should be included as relevant conduct. And I think that the offense here falls within the scope of what the guidelines contemplate for closeness in time, closeness in circumstances and nature of the offense. You know, maybe, but here's my problem. I'm trying to figure out what this third option is, the A2 option for treating some of the substance as relevant conduct. And what you're describing would be true of the first and second option. So the third option does something else. And I know for starters, I think we're the only circuit I can find that has said, as we did in Miller, that the trailing clause applies to this third option. Other circuits don't do that. But what you're describing, which seems entirely reasonable to me, I think that would be true of options one and two. I think you're right that the district court probably relied on option three as best I can tell, which is that the A2 option. So I'm trying to figure out what the difference is between that third category. Your Honor, the way that I read it is that A1A, which has both acts by the defendant and acts by others that are reasonably foreseeable to the defendant, all relate specifically to the offense of conviction. This being the conspiracy, whereas A2 can be conduct that falls outside of the offense of conviction so long as it otherwise meets the requirements of being close in time and nature. I think that's very plausible. And that was my read of it. Hence, because otherwise I don't know what A2 is doing there. And I don't know what difference it makes. Of course, it's there for a reason. I think your reading is very plausible. That's why I run into Miller. You see, this Miller case that we have is the one that indicates that the trailing clause, which requires that it relate to the offense of conviction, that that trailing clause does apply to A2. And that's my that's my it is. I didn't mean to throw either one of you off. This is an issue that's not covered in the briefing, but it is puzzling to me. So I pose it to both of you. Well, if the court would entertain some briefing, I would be happy to look into it further. I appreciate that. If we if we need more supplemental briefing, we'll give an interim order to that effect. Thank you. Go ahead. Go right ahead with your argument, please. So I believe that I fully discussed the four pounds and how they relate and why the district court did not clearly err when it found those to be relevant conduct. The district court also, of course, found that the defendant was a manager or supervisor because he exercised control or organized at least one other participant in the conspiracy. And the district court judge did not abuse its discretion when it applied the guidelines to its factual findings because the district court did not clearly err. The defendant's sentence should be affirmed. Also, would you concede that 1B1.3A2 at least has some time limitation to it? In other words, you're from now or two years from now. Yes, your honor. What would that be? Well, your honor, I think that the circumstances are so so closely related here that we're not we're not engaging in hypotheticals of a transaction that happened a year later. Here we have the same the same players. We have the defendant working with David, who is a member of the Leon drug trafficking organization, the same person that he was engaging with during the time of the conspiracy. It's only about 38 days apart. Your argument essentially then would be that that may be true, but this is not the case. Yes, sir. If the court does not have any further questions. I'll, uh, it looks like we are. Okay. Thank you. Thank you very much. We'll hear from opposing counsel, please. I think there's some time for rebuttal. Hello. Hi, may it please the court. I'm trying to get you on my screen, but I can't. I'm sorry about that. Okay. Um, I think. I disagree that this was closely closely related to the conspiracy. I've expressed that before. But the overreaching argument that I have here is that this sentence is excessive, and it does not comport with the standards of sentencing guidelines. You know, I watched with interest, the congressional hearings on July 28th with attorney general, William Barr. And he said that even though guidelines can technically apply. They shouldn't always apply. And his exact quote was the overreaching requirement at the Department of Justice is that we do not presume and automatically apply the guidelines. We make individual assessments of the defendant and what is really just under the case and nothing that is excessive. So you have this 30 year old man with no felonies, who's an in between between a supplier and distributor. You have tons of case law that says that being a buyer seller doesn't improve the doesn't establish the manager supervisor role. And he had that enhancement. They take a 10 to 12 year sentence. And up at its sentencing all the way to 30 years. So now he's sitting in federal prison for 30 years, only to get deported at the end. Can you explain to me, can you forgive me for interrupting, but this is an important point. If the if the July transaction, if those four pounds are included, what difference does the do the last four pounds make. Well, in our opinion, the July four pounds are not included in the conspiracy either. I appreciate that. Right. If they are included, if they are included, do the last four pounds make a difference in the guideline calculation here. I don't believe so. And I don't know that I don't know the specific answer to that question. I don't believe the enhancement applies based just on the four pounds. If you were to exclude one and not the other, that's your question, right? Right. And the reason I'm having trouble with it is it's a little bit difficult to tell exactly what the substances were or what they're. These four pounds had to do with methamphetamine, but it is methamphetamine. No. Did you say the first or the second? The first four pounds? Both four pounds. Both. Yes. First and second. Isn't there an isn't there an indication that some of this is crystal meth and some of it wasn't? Right. That's the ice calculation. Right. And that's why I'm asking you very specifically whether if the first four pounds is included to the second four pounds, can we tell on this record? No. OK. Go right ahead. That's that's the answer to the question. Thank you. OK. Actually, I'm I'm done unless you have any other questions. Let me just check with my colleagues. Any further questions? No, it looks like no further questions. Thank you both for your argument. We'll take this case under advisement.
judges: Hawkins, Christen, Gritzner